IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JAMES TIPPETT** | ) | |
| **ID # 1516217,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:12-CV-4139-K-BH** |
| | ) | |
| **WILLIAM STEPHENS,**[1] **Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order* 3-251, this case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the habeas corpus petition should be **DENIED** with prejudice.

## I. BACKGROUND

On September 13, 2012, James Tippett (Petitioner) filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for indecency with a child in cause number CR-31-154. Respondent is Williams Stephens, Director of TDCJ-CID.

### A.     Factual and Procedural History

The State indicted Petitioner for indecency with a child on or about October 15, 2006. (Clerk's Record ("C.R."):11). He pleaded not guilty and was tried before a jury on July 8-9, 2008, in the District Court of Navarro County.  (C.R.:7).

The State presented testimony at trial from the complaining witness, A.T. , who testified that

---

[1]  On June 1, 2013, William Stephens succeeded Rick Thaler as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice.  Under Rule 25(d) of the Federal Rules of Civil Procedure, Stephens "is automatically substituted as a party."

she was fourteen years old in October of 2006, and that she lived with her mother, her younger brother, and her mother's husband (Petitioner), at that time.  (R. 3:23-25).  Initially, she liked Petitioner, but he made her uncomfortable when he showed her pictures of naked men and women in the fall of 2006. (R. 3:27-28.)  Sometime after that, he called her into the bathroom and told her that he wanted to see her private parts.  She then lifted her shirt and lowered her shorts because she was afraid he would get mad if she did not.  (R. 3:33-36.)  After this, when she was riding in Petitioner's truck with him, he put his right hand down her shorts and touched her private parts underneath her underwear. (R. 3:40-43.)  Petitioner exposed his private parts and asked her to touch him, which she did because she was scared not to.  (R. 3:47-48.)  Another time, Petitioner stood behind her with his erect penis touching her bottom while she was washing dishes, and he once showed a pornographic movie to her and her friend. (R. 3:49-51, 54).  She had previously written this friend notes about some of the things that Petitioner had done, and she told another friend who was her age, but she did not tell initially tell her mother because she was afraid her mother would not believe her.  (R. 3:48-49, 52-53, 55.)  The first adult she told was her aunt, who encouraged her to tell her mother.  After she told her mother, they moved out of the house and moved in with a relative. (R. 3:56-58.)

The aunt testified at trial regarding A.T.'s statements about what Petitioner had done and the aunt's decision to tell her sister.  (R. 3:133-38).  A.T.'s mother also testified about what A.T. had told her, her subsequent decision to contact the police, a brief period of time when A.T. recanted her allegations, and some doubts she had at times about whether her daughter was telling the truth. (R. 3:84-97, 102-08).  A.T.'s two friends testified about what A.T. had told them and the pornographic movie that one of them watched with Petitioner and A.T., and A.T.'s letters to her friend were admitted into evidence. (R. 3:52-53, 163-78.)  Finally, the videotaped interview between A.T. and

a forensic interviewer at Child Advocates of Navarro County was admitted into evidence.  (R. 4:7.)

The jury found Petitioner guilty and sentenced him to fifteen years imprisonment. (C.R.:77, 88).  His conviction was affirmed on direct appeal.  *Tippett v. State*, 2010 WL 3036480 (Tex. App.–Waco, Aug. 4, 2010, pet. ref'd).  His petition for discretionary review was refused on January 12, 2011.  He did not file a petition for writ of certiorari with the Supreme Court. (Pet. at 3).

Petitioner filed two state habeas application.  The parties dispute the date that the first state writ was filed in the trial court.  It alleged ineffective assistance of counsel, prosecutorial misconduct, judicial misconduct, juror misconduct, and actual innocence.  The state filed a response contending that the application should be dismissed because it was not properly verified under oath. The trial court made no findings of fact.  The application was denied on its merits by the Texas Court of Criminal Appeals without written order on May 23, 2012.  (State Habeas Transcript "S.H.Tr."[WR-72,643-04]:cover, 14-19, 61-2).  Petitioner signed his second state habeas application on July 15, 2012.  It alleged that the evidence was insufficient to support his conviction, that the trial court erred in limiting his cross-examination of the outcry witness, and that he was denied the effective assistance of counsel. (S.H.Tr.[WR-72,643-05]:14-6, 51).  On July 30, 2012, the trial court entered findings recommending that this writ be denied on its merits. (*Id*. at 53-61).  On August 22, 2012, this state application was dismissed by the Court of Criminal Appeals as a subsequent writ. (*Id*. at cover).

**B.   <u>Substantive Claims</u>**

On September 13, 2012, Petitioner filed his federal habeas petition (Pet.) raising the following grounds for relief:

(1) the evidence is insufficient to support his conviction (ground one);

(2) the trial court erred by limiting defense counsel's cross-examination of the outcry

witness (ground two);

(3) his due process rights were violated when one juror had a private meeting with the trial judge and when some jurors were forced to vote guilty (ground three); and

(4) his trial attorney rendered ineffective assistance of counsel by failing to investigate the juror misconduct (ground four).

(Pet. at 6-7). Respondent filed a response on January 15, 2013, and provided the state court records. Petitioner filed a reply brief on March 14, 2013. On April 24, 2013, the Court ordered the respondent to file a supplemental response addressing Petitioner's claim in his reply brief that he filed state habeas applications that tolled the federal statute of limitations. Respondent filed its supplemental response on May 2, 2013, and Petitioner filed a supplemental reply on May 14, 2013.

## II. STATUTE OF LIMITATIONS

### A. <u>Antiterrorism and Effective Death Penalty Act of 1996</u>

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of the Act imposes a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The one-year period is calculated from the latest of either (A) the date on which the judgment of conviction became final; (B) the date on which an impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the Supreme Court initially recognizes a new constitutional right and makes the right retroactively applicable to cases on collateral review; or (D) the date on which the facts supporting the claim became known or could have become

4

known through the exercise of due diligence.  *See id.* § 2244(d)(1)(A)-(D).

Petitioner did not file any petition for writ of certiorari with the United States Supreme Court after his PDR was refused by the Court of Criminal Appeals.  His state conviction became final for purposes of § 2244(d) by the expiration of the ninety-day time frame for seeking further review after the Texas Court of Criminal Appeals refused the petition for discretionary review.  *See Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003) (holding that, when the petitioner has halted the review process, "the conviction becomes final when the time for seeking further direct review in the state court expires"); Sup. Ct. R. 13.  Petitioner's PDR was refused on January 12, 2011, so his state conviction became final ninety days later, on April 12, 2011.

Petitioner has alleged no state-created impediment under subparagraph (B) that prevented him from filing his federal petition.  Nor does he base his petition on any new constitutional right under subparagraph (C).  Under § 2244(d)(1), the one-year statute of limitations is therefore calculated from the later of (A) the date Petitioner's conviction became final or (D) the date on which he knew or should have known with the exercise of due diligence the facts supporting his claims.  With regard to subparagraph (D), the facts supporting Petitioner's claims became known or could have become known prior to the date his state conviction became final on April 12, 2011.  Because Petitioner filed his petition more than one year after his conviction became final, a literal application of § 2244(d)(1) renders his September 13, 2012[2] filing untimely.

### B.   Tolling

Section 2244 mandates that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending

---

[2]   *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

*shall not be counted toward any period of limitation under this subsection*." 28 U.S.C. § 2244(d)(2) (emphasis added). The one-year statute of limitations ended on April 12, 2012. Respondent asserts that Petitioner filed his first state habeas application on April 19, 2012, the date that is file-stamped on the copy of the state court record submitted to this Court. (Resp. at 5). Petitioner asserts that he filed his first state application on February 15, 2012, when it was file-marked by the district clerk's office. He further explains that his family mailed this first unsigned application because he was in lockdown status at his prison unit. (Pet. at 9). He then re-filed a signed petition. (*Id.*). Petitioner has submitted a copy of the first page of his first state habeas application that is filed-stamped on February 15, 2012 (Reply, Ex. A). The state court record does not include a copy of this application, but does include a copy of Petitioner's first state application file-marked April 19, 2012, that is signed and dated on April 16, 2012, and a brief note from Petitioner asking that the clerk's office file his signed petition that he "resent," along with a letter filed with the "other 11.07". (S.H.Tr.[WR-72,643-04]:9, 21-22, 46).

Under Texas state law, a state habeas application must be signed and presented by either the petitioner or any person acting on his behalf and must be verified by either the petitioner or someone acting on his behalf, to the best of his or her belief. *Ex parte Rendon*, 326 S.W.3d 221, 223-24 (Tex. Crim. App. 2010), *citing* TEX. R. APP. P. 73.1(a); TEX. CODE CRIM. PROC. art. 11.12, 11.13 (West 2009). Petitioner acknowledges that the first state application was not signed by him and was not accepted by the district clerk's office, and this is reflected in the state court record. The state application he sent in February of 2012 was not properly filed under state law and therefore could not have tolled the federal statute of limitations under § 2244(d)(2). *See Wickware v. Thaler*, 404 Fed. App'x 856, 858-59 (5th Cir. Dec. 13, 2010) (holding that a state writ dismissed pursuant to Tex. R. App. P. 73.1 was not "properly filed" within the meaning of § 2244(d)(1)(A)); *Davis v.*

6

*Quarterman*, 342 Fed. App'x 952, 953 (5th Cir. Aug. 27, 2009) (same).

The Fifth Circuit has recently held that due to a change in Texas state law regarding when state post-conviction pleadings are considered filed, the pleadings of *pro se* inmates (including petitions for state post-conviction relief) are deemed filed at the time they are delivered to prison authorities for mailing, not at the time they are stamped by the clerk of the court. *Richards v. Thaler*, 710 F.3d 573, 577 (5th Cir. 2013). Here, the record does not contain any direct evidence as to when Petitioner placed his first *signed* state writ in the mail, but he signed and dated it on April 16, 2012. Assuming for purposes of this case that Petitioner mailed his state writ on that date, the one-year limitations period had already lapsed on April 12, 2012. A document filed in state court after the limitations has expired does not operate to statutorily toll the limitations period. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). Therefore, the statutory tolling provision does not save his federal petition with respect to this conviction.

Nevertheless, the AEDPA's one-year statutory deadline is not a jurisdictional bar and can, in appropriate exceptional circumstances, be equitably tolled. *Holland v. Florida*, 130 S.Ct. 2549 (2010); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998); *cf. Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000) (only "rare and exceptional circumstances" warrant equitable tolling). "The doctrine of equitable tolling preserves a [party's] claims when strict application of the statute of limitations would be inequitable." *Davis*, 158 F.3d at 810 (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)). It "applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights." *See Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). A habeas petitioner is entitled to equitable tolling only if he shows that: 1) he has been pursuing his rights diligently, and 2) some extraordinary

7

circumstance prevented a timely filing. *Holland*, 130 S.Ct. at 2562, *citing Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  He bears the burden to show entitlement to equitable tolling.  *Phillips v. Donnelly*, 223 F.3d 797, 797 (5th Cir. 2000) (per curiam).  Courts must examine each case in order to determine if there are sufficient exceptional circumstances that warrant equitable tolling.  *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).  The Fifth Circuit has also stated that when a prisoner contends that his ability to file a federal habeas petition has been affected by a state proceeding, the court should look at the facts to determine whether equitable tolling is warranted. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999).

Petitioner contends that he was unable to sign the first state habeas application because his prison was on lockdown, so his relatives mailed it for him in February of 2012.  He has provided no explanation for why he waited until February of 2012, to attempt to file his first state writ, however.  His conviction became final in April of 2011.  He also offers no explanation as to why a signed copy was not mailed by him until three months later or why he waited until July 15, 2012 to file a second state writ after his first state writ was denied on May 23, 2012.  Petitioner has therefore not demonstrated that he diligently pursued his rights such that equitable tolling is warranted.

Nevertheless, in an abundance of caution, the Court proceeds to address Petitioner's claims on the merits.  *See Coker v. Thaler*, 670 F.Supp.2d 541, 546 (N.D. Tex. 2009) (holding that, because the ADEPA statute of limitations is not a jurisdictional bar that divests a federal court of habeas jurisdiction, a court is not required to address limitations prior to denying relief).

### III.  AEDPA STANDARD

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).  In this case, the denial of petitioner's state writs constitute an adjudication on the merits.  *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits).  Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407.  "[A] federal habeas court making the 'un-

9

reasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV.  SUFFICIENCY OF THE EVIDENCE

In his first ground for relief, Petitioner asserts that the evidence is insufficient to support his conviction.

### A.  <u>Procedural Bar</u>

Respondent asserts that this claim is procedurally barred because Petitioner did not properly exhaust it under § 2254 by raising it in his PDR to the Court of Criminal Appeals, *see Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985), and because his second state habeas application that raised the issue was dismissed by the Court of Criminal Appeals as a subsequent writ under Article 11.07 § 4 of the Texas Code of Criminal Procedure. Article 11.07 § 4 prohibits a claim from being raised in a subsequent habeas application unless: 1) it was not and could not have been raised in the previous application because the factual or legal basis was unavailable at the time; or 2) the claim contains sufficient facts establishing by a preponderance of the evidence that but for a violation of the United States

Constitution, no rational juror would have found the petitioner guilty beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art 11.07 § 4(a) (Vernon 2007).

In general, federal courts may not review a state court decision that rests on an adequate and independent state procedural default unless the habeas petitioner can establish either "cause" for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989). To satisfy the independent and adequate requirements, the dismissal of a claim must "clearly and expressly" indicate that it rests on state grounds that bar relief, *and* the bar must be strictly and regularly followed by state courts and applied to the majority of similar claims. *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001), *citing Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995). "[A]rticle 11.07 § 4 is an adequate and independent state procedural ground to bar federal habeas review and ... has been strictly and regularly applied since 1994." *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir.2000). Because Petitioner has not shown cause or prejudice, this claim should be denied as procedurally-barred.

## B.   Merits

Furthermore, this ground is without merit. Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson v. Virginia,* the United States Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320. The trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable

11

inferences from basic facts to ultimate facts. *Id.*

Further, under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[] the weight or credibility given the evidence." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999). The *Jackson* standard applies whether the evidence is direct or circumstantial. *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998).

Petitioner asserts that there was "no factual evidence" presented at trial to support his conviction and that the testimonial evidence was "not factual" and not corroborated with "factual evidence." (Pet. at 6). Evidence was presented at trial from the complaining witness that was corroborated by letters written to a friend and the testimony of two friends and two adults regarding what she had told them about Petitioner's actions. Viewed in the light most favorable to the prosecution, there was sufficient evidence presented at trial from which any rational trier of fact could have found the essential elements of indecency with a child beyond a reasonable doubt. Any inconsistencies in the testimony of the witnesses was within the province of the jury. Petitioner's first ground for relief should be denied.

## V.  TRIAL ERROR

Petitioner alleges in his second ground for relief that the trial court violated his Confrontation Clause rights by limiting defense counsel's cross-examination of the outcry witness, and that this denied him his due process rights to a fair trial. (ground two). (Pet. at 6).

The complaining witness's aunt, to whom the complaining witness made her first outcry,

12

testified that she had three children.  On cross-examination, she acknowledged that she did not have custody of her children.  Defense counsel attempted to further elicit testimony that her parental rights had been terminated, but the trial court excluded that evidence.  (R. 3:144-47, 153-54).  On direct appeal, the state court of appeals held that the trial court did not err in excluding this testimony because to the extent that the witness initially left a false impression relating to her credibility when she testified that she had three children, any false impression was corrected by the court permitting defense counsel to clarify that she did not have custody of those children.  *Tippett*, slip op. at *3.  This claim was raised in Petitioner's PDR and denied by the Court of Criminal Appeals.  This denial is not contrary to federal law.

The Supreme Court has held that while the Confrontation Clause of the Sixth Amendment guarantees the right of an accused to confront witnesses against him, it guarantees an opportunity for effective cross-examination, not cross-examination to whatever extent the defense might wish.  *Deleware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).  Trial judges therefore retain wide latitude to impose reasonable limits on cross-examination.  *Deleware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Furthermore, a petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), because "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" (citation omitted).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict.  It must have had a substantial effect or influence in determining the verdict.  We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017,

1026-27 (5th Cir. 1996)).  To be entitled to federal habeas relief due to a trial error, petitioner must show that the error actually prejudiced him.  *Brecht*, 507 U.S. at 637.

Petitioner has not shown trial error, much less any prejudice.  His trial counsel was permitted to elicit testimony regarding the witness's prior misdemeanor and felony convictions, the period of time she spend incarcerated, and the fact that she did not have custody of her three children. (R. 3:153-54). The only limit that was placed on cross-examination was that defense counsel was not permitted to elicit from the witness that she lost custody of her children when she was sentenced to the penitentiary, and that they lived with her brother. (R. 3:144-47).  This limit did not improperly infringe on Petitioner's right to confront a witness who testified against him, and did not prejudice him given the other testimony that was elicited.  This ground is without merit and should be denied.

## VI.  JURY MISCONDUCT

In his third ground for relief, Petitioner asserts that his due process rights were violated based on jury misconduct.  He claims that a juror had a private meeting with the trial judge in chambers, and that three other members of the jury informed his family that they were forced to find him guilty against their wishes.  (Pet. at 7).  This ground was denied on its merits at the state habeas level.  This denial is not contrary to federal law.

Petitioner included with his state habeas application a signed letter from one of the jurors, Tenica Jones, stating that she was aware of a private meeting between another juror and the judge in which the juror told the judge that his wife had knowledge of the case and that his neighbor was a relative of Petitioner's current girlfriend.  According to this letter, the juror stated that he told both his wife and the neighbor that he could not discuss or hear about the case, and that when he told the judge about it, the judge told him that he had done the right thing. (S.H.Tr.[WR-72,643-04]:40). Petitioner also submitted an affidavit from Ms. Jones stating that because no one testified for the

14

defense, she felt confident in her decision, but also felt that the defense was inadequate. (*Id*. at 45). With his reply, he also included an affidavit from his grandmother stating that when she saw Ms. Jones at a store after the trial and asked her about the case, Ms. Jones stated she and another juror wanted to sentence Petitioner to ten years, but other jurors wanted to sentence him to twenty years, so they compromised.  According to this affidavit, Ms. Jones stated that had petitioner testified in his own behalf, "they probably would not have sentenced him to any time at all." (Reply at 23-24).

With regard to Petitioner's claim that the meeting between the juror and the trial judge violated his due process rights, the Supreme Court has held that "[t]he mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right," including the defendant's due process rights, because "the defense has no constitutional right to be present at every interaction between a judge and a juror." *Untied States v. Gagnon*, 470 U.S. 522, 526 (1985), *quoting Rushen v. Spain*, 464 U.S. 114, 125-126 (1983) (STEVENS, J., concurring opinion).  In order for the ex parte communication rise to the level of a due process violation, it must render the trial fundamentally unfair.  *Gagnon*, 470 U.S. at 527.  Here, according to the other juror's affidavit, one juror met with the judge to inform him of two people he knew who knew facts about the case or the people involved, and this juror emphasized to these people that he could not discuss the case with them.  The Sixth and Fourteenth Amendments guarantee a defendant a right to an impartial jury. *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  In *Irvin v. Dowd*, the Supreme Court defined an impartial juror not as one who has no preconceived notions, but instead, one who can lay aside his impression or opinion and render a verdict based on the evidence presented in court.  *Irvin*, 366 U.S. at 723. Petitioner has failed to demonstrate either that this juror failed to be impartial, or that the alleged discussion between this juror and the trial judge rendered his trial fundamentally unfair.

With regard to Petitioner's claim that his constitutional rights were violated because three jurors were "forced" to find him guilty, he presents no evidence to support this assertion other than his own conclusory allegation.  Conclusory allegations are insufficient to raise a constitutional issue in a federal habeas proceeding.  *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.1983).  The only evidence Petitioner has presented regarding any juror's impressions about the case consists of one juror's subjective belief that he would have benefitted from testifying at trial, and her statement that the sentence he received was a compromise between the jurors.  This is not evidence of any juror being forced to find him guilty.  Petitioner's third ground is without merit and should be denied.

## VII.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Finally, in his fourth ground for relief, Petitioner claims that his trial counsel was ineffective for failing to investigate any alleged juror misconduct.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art. VI.  The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*,

466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

Petitioner has failed to demonstrate that there was juror misconduct or that his constitutional rights were violated by any action taken by one of the jurors in his case. He has therefore failed to establish that he was prejudiced by any failure to investigate alleged misconduct; he has not shown a reasonable probability that the result of his trial would have been different if his attorney had conducted an investigation into these issues,. The state habeas court's denial of this ground was therefore not contrary to federal law. Petitioner's fourth ground for relief should be denied.

## VIII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IX.  RECOMMENDATION

The request for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

17

**SO RECOMMENDED on this 19th day of August, 2013.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE